We would like to begin our argument by focusing on Mr. Grunwald's appeal, as opposed to the issues that are being raised by the NASD and the State of California with regard to preemption and jurisdiction, because we're hopeful that the panel will not lose sight of the fact that this is an employment dispute. This is a case where Mr. Grunwald sought reconsideration of a preliminary injunction order in which the court found that he was not subject to the EDR program that Credit Suisse-First Boston had and that he was in the wrong court and was required as the exclusive jurisdiction to go to the NASD, which, by the way, he did. Within five days of that order, we went to the NASD. The reason we did that is clear. Mr. Grunwald has been unemployed for an extended period of time. He was employed by Credit Suisse-First Boston. He alleges that Credit Suisse-First Boston scapegoated him and two other employees at the time that the U.S. attorney for the Southern District of New York was conducting a criminal investigation of Credit Suisse-First Boston at a time when the regulatory agencies and the SEC were looking carefully at Credit Suisse-First Boston. I don't really see how we're going to avoid addressing the legal questions, so maybe we should get to them. No, I'm happy to do that, but the only point I'm trying to make, Your Honor, is very simply that this is a matter of extreme urgency to Mr. Grunwald in terms of trying to clear his name because he has been rendered unemployed. All right. So what is the simplest and most straightforward way to decide the case from your point of view? Very well. We think that the simplest and most straightforward way to decide this case is to look at whether or not Mr. Grunwald had a right to a speedy and expeditious arbitration under the FAA. Because when we went into court on our motion for reconsideration, that's what we alleged. We alleged that the NASD had determined to suspend arbitrations in the state of California. And at that time, they weren't requiring a waiver. They were entitling parties, if they wanted to go forward, to go to one of four locales outside of the state of California, which would have involved an implicit waiver of the standards. There's no dispute that the NASD's position was predicated upon. Yes, but then we have to get to that question. That's why I don't see how we avoid them. Okay. In other words, if you say they were willing to give you a speedy arbitration if you went to Nevada. So we still have to get to the question of whether or not the waiver was valid, and that still involves the validity of the rules. So I don't see how we're avoiding it. Okay. Then let me take one more step, if I may, Your Honor. And that is the case of Allen v. Superior Court, which we brought to this court's attention last week. It's a California Court of Appeal case that was finaled on October 29th of this year and came down after briefing. And in that case, which we think is extremely significant, the court essentially followed the approach that we suggested to the district court. The court recognized that the threshold determination was not whether or not you were entitled to the right, as the district court found. The threshold determination was if you have a right to a speedy and expeditious arbitration under the FAA and the judicial decisions that interpret the FAA, then the argument here is very simple. A law was enacted by the State of California. The law on its face applies to all citizens of the State of California. There is a legal dispute pending between the regulators and the SROs on the one hand and the State of California on the issue of preemption. Until such time as that issue is finally determined on the merits by a court of confidence jurisdiction, that law is still on the books. It's on the books today, notwithstanding what the district court held, and it is not a final decision. And so what the Allen court said, and they made specific reference to this in their decision, they said this matter is going to go on for years in the courts, can go all the way up to the U.S. Supreme Court. We now have parallel cases going in the state court and in the federal court. And in that intervening time, the issue of waiver as a condition to holding a hearing, effectively they can't make someone waive a right before a court has determined whether or not such right exists or unless the statute is repealed. So he's not waiving. Now the question is, are the regulators providing a forum within which he can litigate his dispute? And Allen said they're required to provide an expeditious and speedy arbitration hearing. We're going to say that, by the way. I am quoting here from Allen at, excuse me. This is a direct quote. This is 3 Cal Reporter 3rd, 377 at 3, I believe it's 380, but I apologize if I'm off by a few pages. The Allen court states, and I'm quoting, they first cited to a second circuit opinion the In re Solomon shareholders derivative action in which the second circuit said the equities of the case favor proceeding to trial. Four years have elapsed after all since this suit began. While that delay may not be the defendant's fault, surely the plaintiffs are entitled to a speedy resolution of their claims. The Allen court goes on to say, quotes, the same is true here. The challenges to the judicial counsel's ethical standards have just begun. Decisions of the federal district courts will be reviewed on appeal to the ninth circuit and from there possibly on certiorari by the United States Supreme Court. State court litigation will work its way up to the courts of appeal and then by petition for review to the California Supreme Court. It may be several years before the validity of the ethical standards is finally determined. It goes on to say, Payne Weber suggests that the arbitration hearing need not be scheduled or held pending the determination of whether the ethical standards are valid. We disagree. Public policy favors arbitration as a speedy and inexpensive method of resolving disputes. The purpose of arbitration is to voluntarily resolve private disputes in an expeditious manner. 3 Cal Reporter 3rd, 377 at 387. Interestingly, in that case, the real party in interest, Payne Weber, asserted that NASD rule 10315 in effect allowed the NASD to cease all operations in California and require all resident investors to attend hearings outside the state in such places as Las Vegas, Phoenix, Portland, and Seattle. The court What? I assume there is something in the agreement or in the NASD rules that says that the arbitration will be held in California? Yes. Under normal processes and as the court recognized below, this matter would have been heard here in San Francisco. I'm just wondering, is that for a contractual reason? I believe it's because employment disputes under their rules are to be litigated in close proximity to the place of employment. And accordingly, it would normally be heard here in San Francisco. Is that what the rule is? Not in what state it's held? I'm just curious because it seems to me to be central to both the Allen case and to your position because they were willing to litigate in Las Vegas. That's true. So you must have unless you have a contractual right to arbitrate in California, you're not in very good shape. Well, I think that we did, but, again, the court, the Allen court, if I can just continue because the court focused on that issue. I know, but they didn't really explain where they were getting the right to arbitrate in California particularly was. Well, you know, it's interesting because there are two types of cases generally that are handled before these SROs. The vast majority of cases are customer complaint cases. They're investor cases where investors are alleging churning, unsuitability, things of that nature. And that is the vast majority of the cases. There's a small percentage of the cases that are employment cases that are brought in this tribunal. And just as an aside. I suspect there may be something in the statute and the rules that do give you that right, but you seem to be giving it away too fast, but I don't know. What there is is there are the forms of the NASD specify that the director will select the location in an employment case. And that's where I'm coming from, that in an employment case, the director will select the location in close proximity to the place of employment. The Allen court was dealing with an investor case. And in an investor case, the director may designate where the case will be heard. But under normal conditions, the case is going to be heard at the location where the investor opened the account. And that's historically where these things are customarily held. There is no rule that says that the director can compel a litigant to arbitrate outside of the state. And, in fact, if there was such a rule, they wouldn't have given an option to us. They would have just directed us, go try your case here. What they did in that rule change was they said, you will be entitled to have your case heard in California based upon an explicit waiver of the standards. Or, should you so desire, you can have your matter heard in one of these four out-of-state locations, but, of course, implicit in that is that you will not be given the standards. The standards will not apply to that hearing. And we argue, again, based upon the determination in Allen, because Allen went back and said, look, it didn't buy into the Rule 10315 argument that Payne Weber had put forward. The time of Allen, was the NASD agreeing to arbitrate elsewhere, or were they simply shutting down? The NASD agreed that if you wanted to have your matter heard. Time of Allen. In the Allen case, is that true? Yes. Yeah, it was the same rule. The same rule. It said if you want your matter heard, you can go to one of these four jurisdictions. The court, interestingly enough in that case, the court said that the court hadn't directed the investor to a specific forum. The court had given him a choice, and that the SRO was required in a speedy and expeditious fashion to specify which forum. And then the case was remanded to the trial court, saying, the trial court, you decide whether that location is unreasonable and just. If it's unreasonable and unjust, this case is tried in court. And again, Allen said, we don't have to make what the SROs are contending and what Credit Suisse is contending, this threshold finding of preemption, and get in the middle of this dispute, because that's going to go on for a period of years, and ultimately this party will be denied the right to a speedy and expeditious arbitration. And absent that right, the jurisdiction over the dispute by the NASD is vitiated, and that the party is free to go to court to get the issue resolved. And that was what we argued to the district court below. Now, some way, some how. And also I'd like to point out one thing. The issue of preemption and the issue of the judicial counsel's exceeding its authority, those points were raised at virtually the 11th hour in our case. In other words, we filed the motions, we filed supplemental motions urging the court to rule, because this matter was not decided by the district court for some eight months, seven-plus months. And each time there was a change in the status of the NASD-NYSE litigation with the state, we would bring that to the court's attention, say, now look what's going on. Here we're facing a situation where the district court basically said to the SROs, you filed in the wrong court. You can't sue these state entities under the 11th Amendment in district court. But the SROs didn't then go to state court to litigate the claim. They filed a notice of appeal, which extended the issue not on the merits, but on the issue are they in the right court. We brought that to the court's attention. Sometime in December, if the logic of Allen is good and should be followed by all courts, we would never bother to get to the complicated issues. Right? I agree. The court could say, let's do it in a hurry because we don't want to get involved in the tough cases.  I appreciate that, Your Honor. And if we were all like the Allen court, the life would be pretty simple. Just throw this into a forum that will get it done in a hurry, and we don't need ever to decide these complex ones. That's what you're asking us to do in this case. Respectfully, I'm not, Your Honor. What I'm suggesting, Your Honor, is no matter how the court ultimately decides that issue, that that does not dispose of the issue we raised. The question is how are we ultimately going to decide it is what Judge Levy is saying. If everybody walks in here and we send them off to an expeditious place. Also, the other problem is that Allen does not conclude that you don't have to go to Las Vegas to arbitrate. It sends it back to the court to decide that. And in your particular circumstances, if I need to predict, you're probably going to get sent to Las Vegas because you're either going 400 miles this way or 250 miles that way. And wherever you're going, you're not staying in town. You're not staying in Los Angeles. The argument that we make, though, is based upon a finding of whether it's reasonable and just to go elsewhere. Our position is it's unreasonable and unjust because we're being required to waive a right before there's been a final determination that that right, that right, that we're not entitled to that right. But here you are, and we can decide that. We're saying look where we are. We're already 18 months beyond the point where my client made his motion. I would suggest you use the next four minutes and 20 seconds to say something about this other issue. There's many other issues. May I reserve and come back for that, please? Yes. Yes, I would like to reserve the balance. Yes, you may. Thank you. All right. May it please the Court. I believe that we need to decide this issue, and I think that this Court is the Court to decide it. Well, there are several issues. There are several issues. Which one do you want to address first? Well, what I would like to talk about are the two preemption issues. And the reason for that is this. There is a very basic and fundamental problem with what Mr. Blumenfeld has so artfully avoided saying to you by concentrating all of his efforts and time. By the way, do you agree there's jurisdiction here? I'm sorry. Real quickly without spending a lot of time. Do you agree there's jurisdiction as a motion to modify an injunction? Yes. Yes. As a general matter, yes. There is. If the reconsideration motion is timely, there would be a union. And we have an interlocutory appellate jurisdiction because it's a motion to modify an injunction. All right. Yes. We had argued otherwise, but that's all set forth in our papers. What Mr. Blumenfeld spent all his time trying to say was, please don't decide these issues. These issues being, in part, the preemption issue. These issues must be decided. They have been. On his theory, we'd have to decide it anyway, or at least the district court would in order to decide whether it was reasonable and just or back in the same place again. The district court already decided. It ruled in our favor and against Mr. Grunwald. That's why he appealed. The district court considered the issues of preemption. And it based its decision on the Judicial Council standard issue of whether or not the statute extended to SRO arbitrations and therefore did not reach these other issues. But let me address those. First of all, in essence, when you cut away from the get beyond the position of please don't decide any of these issues, what you get to is what Mr. Grunwald is asking this court to do is to say, look, the California legislature has done something, passed some statute, and the California Judicial Council has acted on that. Whether or not that's within or out, let's assume for a minute it's within their authority to do this. What he's saying is, as a result of that, the NASD is required to adopt that rule, adopt those rules, I should say, and those procedures. As we set forth in our papers, and it's just basic law under the 34th Exchange Act and the regulations promulgated by the SEC under that and the regulations of the SROs themselves, the SEC would then be required to approve those rules. It would be helpful to me if you could explain. That argument depends on a conflict preemption argument, right? No, it does not. It does not in the following sense. There are a number of ways in which these standards are preempted by the Exchange Act. One is direct conflict, and that is not so much in the issue of what is the intent behind the standards in terms of what types of matters need to be disclosed, but it's who does the disqualification and how does that occur. That is in direct conflict. Under the Judicial Council standards, the parties themselves can disqualify. They make the choice. Not only that, the parties themselves and under the Judicial Council standards can disqualify regardless of whether or not there is bias or not or cause for the disqualification. The statute gives unfettered ability of the party to simply say, I don't like this person, even though there's nothing in their disclosures that actually objectively would provide a basis for a challenge. Your scheme allows that up to a point, but then cuts it off. Is that right? I'm sorry? Well, initially, the director of arbitration decides issues of actual challenge to an arbitrator. Yes, there is a striking and a ranking, but when arbitrators are selected, parties may challenge those arbitrators on some ground, but the director of arbitration then has to determine the validity or invalidity of that challenge based on a standard of cause, partiality or some reason of bias or some other reason why the arbitrator should not proceed. And on the California system, they just have infinite strikes, essentially? Yes. When you look at CCP section 1281.91, what you'll find to your surprise when you read that statute over and over again, as I did when it first was enacted, is that the parties simply can disqualify after the disclosures are made. It's in our appendix to our CSFB's opening brief. We have our initial segment as sections out of the Code of Civil Procedure. And I'm sorry, you have to go about 89 pages in. But what that statute says is that the arbitrators make their disclosures and then the parties simply make a challenge to that arbitrator. You're disqualified. There is no provision for some third party determining the validity or the basis of that challenge. And, in fact, the party does not have to say that it's because of a certain disclosure or not. So there is that unfettered access, and it's the ability of the parties, as opposed to a third party, that is the director of arbitration, to make the determination as to whether there is cause that is in direct conflict. So there you have a direct conflict which requires preemption of at least that portion of the law. It says the parties shall have the right to disqualify one court-appointed arbitrator without cause in any single arbitration and may petition the court to disqualify a subsequent appointee only upon a showing of cause. But it is the party who is simply able to strike that person. It doesn't say that. It says they can only strike one. Exactly. But the point is, is that the arbitration provision allows that challenge to be made by parties, and there is no provision there for a showing of cause. The procedure is different. What they're talking about is the ---- First one is a free strike, you said. What's the final arbitration? Exactly. To get a free shot. Exactly. Sort of like a predatory.  And those procedures by which that is done are in direct conflict with the NASD's procedures. Every challenge for cause must be decided by the arbitration director? Well, after the initial striking. After the initial strike. Exactly. And one of the things that happens as a matter of procedure, and the counsel for the NASD can explain this more succinctly, but, you know, when, and I've experienced this myself, if the parties sort of strike everyone that's out there, the director of arbitration simply selects ---- I'm really not sure you're right. It seems to me that the scheme that's being set up here is that before any strike system or anything else, as soon as the arbitrator is proposed, it says the proposed neutral arbitrator, that they have disclosures. Yes. And in your system, you have more than one strike for cause, really, right? Absolutely. I mean, for non-cause. I mean, you have a free strike without cause within the limits of how many arbitrators are proposed. This one seems to have one strike without cause. So I'm not sure there is a conflict on that particular issue. There may be a conflict on what happens after that because here you then go to a court, and in yours you then go to the director of arbitration. Well, there's a very direct conflict. From the very beginning, the director of arbitration selects these individuals that are on the list upon which the parties will strike. Right. That is part of the rule. Right. And under the California system, those people would then have to give disclosures. And under your system, they have to give some disclosures. Exactly. Right. But under the California system, how those people are chosen is a matter for the parties, either the arbitration agreement that's specified in their agreement. So in your agreement, it's just the director of arbitration. I don't see the conflict on there either. All of those things are in conflict. Why? Because it is saying you cannot use this procedure. You cannot use the MS. Where does the California system say that you can't choose somebody to give you a list of arbitrators? The point is that it doesn't say it. What it's trying to do is replacing the system that the NASD has in place with the California system. But the California system doesn't specify how the list of arbitrators is generated in the first place. No, it doesn't. It doesn't. And I think what I'm getting to is the point that once you get down into this, though, there is a point at which the director of arbitration has certain responsibilities and duties and is charged with certain acts and responsibilities in the NASD system, and those are in conflict with what the rules are of the Judicial Council. But even if there weren't a direct conflict, the argument that is being made here is that the NASD must adopt these rules of the Judicial Council, which would require by statute the SEC to approve them. This is a reversal of the Supremacy Clause. This says the states get to determine what an agency established by Congress with exclusive oversight of SROs. I have two questions about that. One is who says they have to adopt them as opposed to just follow them, and the second is suppose they do, they at least may have an obligation to propose them. The SEC may then be able to disapprove them, and then we may have a different issue. Well, the SEC has already filed an amicus brief in this case, which has quite clearly made its point that, no, it has considered this and has rejected it. It does not want to follow these rules, and it is not proposing to adopt them and will not adopt them. That is the SEC's position in the amicus brief. They've considered all of these issues, and they have determined in their discretion this is not something they want to encourage the SROs to do, nor are they going to require them to do it. And that is the determination that the Jeveny court in the case that just came down two weeks ago gave deference to and that the Mayo court out of the Northern District in San Jose also gave deference to. Beyond that, there, of course, is the FAA preemption, and let me just touch on that for a second. The other aspect of the argument here is, okay, if you suggested, Your Honor, that perhaps the NASD doesn't have to adopt these rules, maybe it can circumvent the Supremacy Clause problem. I mean, I actually think the FAA argument is more troublesome. Okay. And so if the NASD then says, well, we'll circumvent the Supremacy Clause problem by following rules that aren't really our rules and that aren't what the parties have agreed to in their arbitration agreement when they agreed to follow NASD rules, but we'll follow those. Well, that is an abrogation of an entire body of case law that says the parties have a right to select the rules under which they will arbitrate. And that's starting from Volt on and even prior to Volt. But it was certainly made clear in Volt that the parties have the ability to establish what sort of set of rules they're going to arbitrate under and to suggest that now you've got a choice here between. The question is whether or not one can view these, at least some aspects of the arbitration, of the new rules. And my understanding is that your opponent may not be seeking to enforce all of it. He doesn't seem to be trying to enforce the rules about vacating or disqualifying arbitrators, but simply the substantive standards. Let's assume that for now. Could you view this as sort of tantamount to a licensing or registration rule? I mean, if parties agree to hire a plumber and the state law is you can only hire licensed plumbers, and here's licensing rules, why wouldn't this be a rule similar to those that apply to contracts in general in that respect, i.e., they're regulating the arbitrators, not the arbitration? Well, I think there's two answers to that. First, we need to address that issue if and when the California legislature decides to make arbitrators, that qualification, some sort of state-run license, you know, qualification. And I think, I suspect that that's going to fairly quickly run afoul of the FAA, particularly when it comes to an SRO. But they're essentially saying you can't be an arbitrator unless you do X, Y, and Z. Well, no. And that's a substantive rule. They're not saying these are the people that can be arbitrators. No, but they're saying in order to be an arbitrator, you have to do X, Y, and Z. You have to disclose these certain things, and certain people have to be in charge of making the objections to this. And that's simply impermissible. I mean, when you look at the cases that are under the FAA, the court has struck down everything from a situation with, like, doctor's associates, which prescribes the procedure that you have to have to have an enforceable clause, down to other panels of this Court in Bradley v. Harris Ranch saying a venue provision that conflicts with what an arbitration agreement says is preempted by the FAA. This is a provision which not only conflicts with what the rules that the parties have agreed to, but says that if you don't follow it, because this is the next part of it is, your arbitration agreement is subject to being vacated. I understand your opponent should be walking away from that some, and I think that would be much more. I understood your opponent to be walking away from that aspect of the rule. He can't. He can't walk away from that. If the Judicial Council rules apply, then he has the right at the end, if the NASD does not follow it. But he could say that part of it is preempted, but the substantive rules aren't.  I'm just trying to sharpen the issue, that's all. At that point, you're still substituting a set of rules that the parties have not agreed to in their arbitration agreement for something that the State has arguably done and said this is applicable only to arbitration agreements. Arbitration agreements, you've got to do X, Y, and Z. We don't care what your rules are. That's a little bit peculiar because, of course, it only applies to arbitration agreements because it only deals with arbitrators, but it also has, as I said before, licensing rules and regulations of who can do what kinds of jobs or how to do other kinds of jobs that apply to other agreements. So I'm not sure that this is really – it's particularized to the circumstances, but it's not a kind of rule that is generally available. I'm not sure I understand what you're saying. It's one thing to say that arbitration rules – that arbitration agreements aren't going to be enforced unless they're written in a certain way or something like that. But here, all they're doing is dealing with the people who are doing the service. They're not – they're not singling out arbitration agreements as such for – in fact, this is what the California Court of Appeals, which found NASD – which found SEC preemption held with regard to FAA preemption. Well, you're referring to the passage in Jevney where the court made some sort of distinction that, frankly, I don't understand between – you know, preemption is a matter of law and preemption is a matter of fact. But I don't think that there is – there can be a distinction here when you have cases and this very court striking down venue provisions. They don't – I mean, if you can't do that, how can the court require this type of a change? I would like to reserve some of my time for the NASD's counsel, so as much as I've – Thank you. Thank you. May it please the Court, Mark Perry for the NASD, and I appreciate the Court's indulgence in hearing from us as amicus. To address several of the Court's questions, Section 1291B2 applies only to court-appointed arbitrators, so that that one strike and then the challenge provision that the Court referred to does not apply to NASD arbitrations. B1 is the applicable provision, which provides unlimited strikes without cause in NASD. The court asked who says they have to adopt them. As Mr. Early said, the SEC says we would have to adopt the California standards by rule before we could comply with them. If we were to attempt to adopt the California standards, we would be out of compliance with the SEC rules subject to Federal sanctions, and frankly, we couldn't do that. They have to approve all your rules? They have to approve all of our rules. There are minor exceptions, but all rules in the areas of arbitration have to be approved under the Exchange Act by the SEC. The SEC commissioned a study by Professor Perino that said, should we require the NASD to adopt the California rules? Professor Perino said no, and so the SEC sent us a letter and said, okay, you don't have to adopt the California rules. It seems to us that's the end of the matter under the Exchange Act because our rules preclude the California rules. The SEC has said we don't have to adopt them. Our current rules, which have been approved by the SEC, don't allow us to follow them, and so that any attempt to import the California standards into our procedures is if so facto preempted by Federal law. Did the SEC say you may not adopt the California rules? You do not have to adopt the California standards. Did they say you may not? I'm sorry? Did they say you may not? We have not requested to. They said that we do not have to. Right. That was the point, that there's a difference between you may not and you don't have to. Your Honor, but until and unless we were to propose them and they were to approve them, we may not apply them today. But if the California law was not preempted and you had to propose them, at least to the degree of having to propose them, then you'd have to propose them. I disagree with that, Your Honor, because I don't think the states have the authority to require the NASD to propose rules to the SEC. We have a set of procedures in place that's already been approved by the SEC and approved by the Supreme Court as protecting investors and other arbitration parties. The states are not free to intrude in any way on those procedures that we have in place. But that's a different argument. I mean, then you're just simply saying that this statute sets up a situation in which we have no obligation to pay any attention to state law. And it's not because the SEC says so, because the SEC hasn't said that these rules are good or bad. They've just said you don't have to do it. They have said that we can follow our own rules, which are preclusive and exemptive of these California rules. In other words, the two cannot exist in the same space, so we're going to follow the ones that's required by federal law that's allowed by the SEC. What about the California rules that the NASD dislikes or doesn't want to comply with? There's something deeper here. There are a host of reasons. Let me lay out a couple. One is the sheer cost of compliance. The evidence we submitted in Mayo showed that it would cost over $7 million in the first year alone for the NASD to attempt to come into compliance with the California standards. What was the status of Mayo, by the way? No party appealed in Mayo. Okay. So there's just a sheer administrative cost, adding personnel, retooling computers, tracking information that we don't currently track. The second is that we would be undertaking all of that expense, which ultimately would be borne by arbitration parties, presumably if we changed our fee schedule, to no additional purpose. The current scheme works well. The SEC says it works well. The federal courts say it works well. We think it works well. And that there's absolutely no reason for us to undertake this massive effort in order to fix a system that isn't broken. The third reason is that the California standards create a trap for the unwary. One interesting thing, you're assuming that you would pay the cost for the arbitrators to do the disclosures? Your Honor, the standards require the arbitration provider to track most of this information as a practical matter. I see. The cases in which they're involved and the parties and the attorneys and so forth, the NASD would track all that information. To give you one example, the California standards would require every arbitrator to disclose all the fees that Credit Suisse has paid to NASD over the past five years. That's millions of dollars in registration fees, administrative fees, perhaps there have been fines or penalties, all sorts of miscellaneous things that have nothing to do with arbitration, because remember the other side of NASD is the regulatory body that regulates the securities industry. So that, you know, that, and we don't track that information right now. There's no system. Is the AAA complaining about this? Excuse me? Is the AAA complaining about this? The AAA has agreed to comply with the California standards. The trap for the unwary was? The trap for the unwary is that if you look at the disclosure requirements in Standard 7 and the provider requirements in Standard 8, they are so detailed going out to so many levels of relations within families and law firms and so forth. I mean, it's every partner in a law firm can, is subject to disqualification, that they would render the ultimate integrity and finality of arbitration awards suspect, because a clever lawyer could find a failure, a technical failure, to comply with the California standards that would not affect the partiality of the arbitration. That's an important point. The California standards allow vacater of an award even where the partiality of the arbitrators is not called into question, which is a dramatic change from existing law, both in the NASD world and the FAA world. The other piece of that, Your Honor, is our arbitrators are concerned about their ability to comply with the California standards. It's a huge record-keeping burden on them. They get paid a very modest stipend for performing this public service. They're lawyers who essentially volunteer their time. They don't want to be sued for failure to comply with these standards. They don't want to have their awards challenged on these grounds. They provide voluminous disclosures under existing rules, the disclosures that the SEC and Professor Perino has written. They're not paid. They don't receive it. They are paid, I believe it's $500 a day, Your Honor, so it's nothing like the commercial arbitrators who charge like law firm partners by the hour. They're paid a small amount for the day, and then they get their expenses covered. I believe it's $500 a day. I see I've overstayed my welcome. I do want to be honest. Do you have a point you wanted to make? Your Honor, I'm here to answer questions. I would like to make one final point. Counsel said this will be eventually decided in a court of competent jurisdiction. Here we are. The California court already decided it in Jevenny. Jevenny renders Allen absolutely moot because the Allen inquiry never comes up now that Jevenny has been decided. In the state court system, that's final unless the California Supreme Court takes it. In the federal court system, you know, we think they've got it right in Mayo, and we urge this court to decide these issues fully and finally so that we can all get on with our lives and provide these arbitrations. Thank you. Thank you very much. Thank you. I want to get back to one point, and that is we're not suggesting that this court need not make a determination on the issue of preemption. We're not suggesting that at all. We're simply saying that the ultimate decision. I'm sorry? No, no, no. What I was doing was essentially parroting what the Allen court suggested, which was that our issue could have been resolved by mere application of contractual principles relative to arbitration, and that the big picture, when it does get determined. But that isn't even true because ultimately when you worked it all the way through, you had to get back to the question of the reasonable and just arbitration or not. So you were just going to go back to the district court and argue the same thing again. It doesn't make sense. What I neglected to point out to the panel was that the argument is that the waiver itself is not enforceable, that the waiver violates California public policy because the statute was enacted for the public benefit. And under Civil Code Section 3513, my client's not even permitted to make such a waiver, that that waiver, and he's certainly not permitted to waive the obligation. If the statute's preempted, then he is, so we're back in the same place again. Well, I'm not clear that we are because, again, what about the right to a speedy and expeditious arbitration, which the district court found we don't have? Clearly we have that right under the FAA and under all of the decisional authority interpreting the FAA. And we are 18 months now beyond the point, and we still don't have a panel, and we still don't have a hearing. And the argument is, well, all you had to do was waive and you could have your hearing, requires that we waive, we submit to a coerced waiver at this stage before the final determination. I'm having a difficult time articulating this issue. Do you agree that there are conflicts between your rule, the California rules and the NESD rules? No. No, I don't. Why not? I'm happy to try to address it. And also, I sensed in your briefs that you were arguing, you were essentially walking away from trying to enforce the vacation and disqualification rules by saying we're only talking about the Judicial Council rules and not about the statute. No, no. You did say that several times. I'm sorry, Your Honor. That was a point raised, but certainly not an effort to walk away from that issue. Walk away from it, meaning that you would recognize that it would be difficult to not find preempted a different rule for vacating an agreement, an arbitration. We submit that at the end of the day, you know, a lot of noise is being made on the issue of the director's discretion with regard to disqualification and vacater. And we submit that that discretion is not unfettered, that that discretion is subject to the provisions of the FAA. And accordingly, if the director abuses that discretion, the parties can go to court and they can get relief. Consequently, we're saying this is a tempest in a teapot, the argument that he has discretion. And by the way, Professor Perino in his report mentions that vacater, this whole issue doesn't even really exist. A minuscule percentage of these matters are ever raised or ever brought out because what are we talking about, Your Honors? We're talking about a situation where an arbitrator fails to make a disclosure and it is subsequently determined by a party. Well, that is very unlikely to happen. What we're looking for is transparency in the system. We want that checklist, that 14, you know, all those items checked off so that at least we know when the arbitrator has gone through the list, instead of looking at it from a general perspective, that there's nothing that would cause me to be anything but impartial and I don't have to disclose anything, go through the list and say yes, no, yes, no, so we can ask questions and exercise our peremptory challenges in an appropriate way. One final point that I want to make is I would request this panel to look at NASD Rule 10305A, because the SEC asserts that it, you know, it has an iron fist over these proceedings and it's imperative that these proceedings be held in a manner that is consistent with their rules and that that's why they don't want the arbitration standards, the ethics standards employed. 10305A provides that any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies or to any dispute resolution form agreed to by the parties. Now, what that tells me is that if an arbitrator exercises that discretion, independent, doesn't have to go to the SEC for approval of a rule change or anything, he can simply say fine, go to the AAA, go to someone else which adopts these standards. Well, you just read didn't say that. It said he can go to court or somewhere agreed upon by the parties. Right. Both parties have been saying things that just aren't borne out by the sentences that you're reading from. And that one is not. I apologize. What I am suggesting here is that the arbitrator has discretion either on his own initiative or at the request of a party so that the arbitrator hears somebody who's an independent individual that comes in, he's hearing this thing, and he says, you know what, I'm going to send this out somewhere else. He has that right under this rule to do that. The rest of the sentence said to a place agreed upon by the parties. That's what you read me anyway. I'm sorry. I said he may either upon his own initiative or at the request of a party dismiss the proceedings and refer the parties to their judicial remedies. Right. He can simply say go to your judicial remedy. That's right, but not to the AAA unless they agree to it. All right. The judicial remedies would allow somebody to go into court, for example. And then they would clearly, you know, have they would avoid the entire NASD arbitration procedure. There's a rule in place that permits that today, and that's where I would like to close at this point. Okay. Thank you, Mr. Romo. We appreciate the parties' arguments in this case. Thanks. Very good. The matter will stand submitted and the court will be in recess until tomorrow. Thank you. Thank you. Thank you.
judges: Leavy, Paez, Berzon